# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XIONG LON MAI, | No. 2:20-CV-1163-DMC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 6 and 7, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the Court are the parties' briefs on the merits, ECF Nos. 16 and 18.

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1      Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2      If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3      If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

///

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on September 21, 2016. See CAR 18.[1] In the application, Plaintiff claims disability began on May 30, 2016. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on April 30, 2019, before Administrative Law Judge (ALJ) Carol A. Eckerson. In a May 30, 2019, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): major depressive disorder, PTSD, and anxiety disorder;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the claimant can perform a full range of work at all exertional levels; she can perform simple repetitive tasks; she can sustain attention, concentration, persistence, and pace; she can attend and complete a workday or workweek for simple repetitive tasks; she cannot have public interactions; she can frequently interact with coworkers and supervisors; she can adapt to changes and stress for simple repetitive tasks;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 21-28.

After the Appeals Council declined review on April 8, 2020, this appeal followed.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

4

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on October 22, 2020. See ECF No. 13.

## III. DISCUSSION

In her opening brief, Plaintiff argues: (1) the ALJ erred at Step 2 in determining Plaintiff's physical impairments are non-severe; and (2) the ALJ erred at Step 4 in rejecting the opinions of consultative psychologist Shyma El Sayed, Psy.D, and treating physician, Dr. Rochanayon.

### A. **Severity Determination**

To qualify for benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).[2] In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923. An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. See Social Security Ruling (SSR) 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. See id.

At Step 2, the ALJ addressed the severity of Plaintiff's impairments as follows:

> The alleged left deQuervain's tenosynovitis, right upper extremity pain, diabetes mellitus, and headaches are nonsevere.
>
> On January 21, 2016, the claimant reported that about a year ago she started to have headaches, mostly on right side of her head with blurry vision, nausea, vomiting, and right hemibody weakness and numbness. She also alleges right upper extremity pain, hypertension, and diabetes

---

[2] Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

mellitus. Physical examination showed the claimant is able to sit comfortably on the examination table without difficulty or evidence of pain. There is no evidence of bony tenderness, joint effusion, enlargement or abnormal motion, no muscle fasiculations, atrophy, muscle weakness, or reduces range of motion. The claimant was seen on April 26, 2016, with complaints of left hand pain for two weeks, hard to grip and make a fist. The claimant had left hand tenderness to palpation over the metacarpophalangeal joint of thumb. In a follow up in September 2016, the claimant was diagnosed with ganglion left wrist; she was referred to a hand surgeon (Exhibit B2F). On June 1, 2017, the claimant complained of back pain and left shoulder and arm pain. Movements are restricted with active elevation and pain. On palpation, tenderness is noted in the acromioclavicular joint (Exhibit B9F/3). An x-ray off the left shoulder showed minimal degenerative changes (Exhibit B9F/21). A Physical Therapy (PT) note[] December 2017 showed the claimant continued to complain of left shoulder pain but she demonstrates improved left shoulder mobility with range of motion since the initial PT visit. She has good range of motion progress and decreased guarding of left shoulder with manual interventions (Exhibit B14F/18).

On January 30, 2017, Dr. Lin['s] impression of the claimant was left deQuervani's tenosynovitis. A rheumatoid panel from March 2017 was negative (Exhibit B7F/10, 7).

In April 2019, Dr. Rochanayon completed a Headache Medical Source Statement and he reported he has treated the claimant for six years for enthesopathy, unspecified, major depressive disorder, hypertension, and diabetes. The claimant's headaches are severe with signs and symptoms of nausea, vomiting, throbbing pain, mental confusion, inability to concentrate, mood changes, exhaustion, malaise, numbness, visual disturbances, impaired sleep, impaired appetite, pain worse with activity, and causes avoidance of activity, and inability to drive a motor vehicle. She has 6 headaches per week and 28 per month. The duration of a typical headache is 40 minutes or 12 hours. Bright lights, hunger, lack of sleep, noise, and stress triggers the claimant's headaches. She has to lie down, take medication, and a quiet place makes her headaches better. The claimant would be off task 5% of the time. She would be absent from work more than four days per month (Exhibit B13F). This assessment is not supported by the doctor's own treatment record or by the medical evidence in file. The most recent medical evidence of record does not even mention headaches much less at this level of severity. Physical limits are not supported by the doctor's exams, most of which show no objective findings. From January 4, 2018, through March 6, 2019, the claimant's treatment consisted of medication refills (Exhibit B14F).

Treatment notes from Dr. Rochanayon from January 4, 2018, through March 2019 showed the claimant was prescribed medications. In a follow up in March 2018, physical examination showed right shoulder movements are painful with extension and internal rotation. The claimant's Body Mass Index was 31.03-31.9. Diet and exercise was [sic] discussed with the claimant. The claimant['s] hypertension is treated with medication and diabetes without complication (Exhibit B14F).

CAR 21-22.

1 | Plaintiff challenges the ALJ's assessment regarding her hand impairments and
headaches.  See ECF No. 16, pgs. 6-10.  Plaintiff also challenges the ALJ's assessment of her
"myalgias [and] ongoing shoulder and upper extremity pain and numbness. . . ." Id. at 12.

      1.      Hand Impairments

Plaintiff argues:

> . . . Regarding Plaintiff's de Quervain's tenosynovitis in the left hand, the ALJ does not explain her conclusion that the evidence does not show this to be a severe impairment. *See*, AR 21-22. The ALJ, instead, simply references at step two several treatment reports that affirmatively find significant hand (and shoulder) dysfunction. Specifically, the ALJ acknowledges Plaintiff's treatment with board-certified surgeon James T. Lin, M.D., who in 2017 examined Plaintiff on three occasions, found a "compressible mass" on the left wrist, moderate tenderness, positive Finkelstein test, [footnote omitted] and recommended hand surgery after a steroid injection failed. *See*, AR 373-377. But after generally mentioning the existence of Plaintiff's evidence, the ALJ gives no reason for finding Plaintiff's hand impairment non-severe.

ECF No. 16, pgs. 7-8.

Plaintiff contends the ALJ erred by failing to explain why her hand impairment does not meet the de minimus threshold at Step 2.  See id. at 8.  Plaintiff asserts that her hand impairment, "by definition, limits work tasks such as grasping, making a fist, or repetitive hand or wrist movements. . . ." Id.

At the outset, the Court rejects the suggestion that the existence of an impairment meets the legal threshold at Step 2.  See Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). First, not all impairments result in limitation.  Second, not all limitations are work-related.  Third, not all work-related limitations are severe enough to more than minimally effect the ability to perform work-related tasks.

As Defendant correctly observes, Plaintiff bears the burden of proving the existence of a severe impairment.  See Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005). To meet this burden, Plaintiff must point to evidence of record showing her hand impairment more than minimally impacts her ability to work.  Plaintiff has failed to do so here.  Both Plaintiff and the ALJ cite Dr. Lin's records at Exhibit B7F.  In particular, the ALJ cites the doctor's impression at page 10 of Exhibit B7F of "Left deQuervain's tenosynovitis." CAR 377.  Plaintiff

references the same records at CAR 373-77 which, according to Plaintiff, show Dr. Lin "examined Plaintiff on three occasions, found a 'compressible mass' on the left wrist, moderate tenderness, positive Finkelstein test [footnote omitted], and recommended hand surgery after a steroid injection failed." ECF No. 16, pgs. 7-8.

Exhibit B7F consists of 13 pages of medical records from Dr. Lin. The following is a chronological summary of this evidence:

| | | |
|---|---|---|
| January 30, 2017 | | Chart notes of initial visit with Dr. Lin. The doctor reported that Plaintiff presented with complaints of left radial wrist pain and wrist mass. Plaintiff also presented with a left volar radial wrist mass and radial wrist pain since May 2016. Plaintiff also complained of bilateral shoulder pain. On physical examination, Dr. Lin noted a 1 cm diameter compressible mass of the left volar radial wrist. The doctor also noted that Plaintiff's left first dorsal wrist compartment was tender and a positive left Finkelstein test. Dr. Lin's impression was left deQuervain's tenosynovitis, left volar radial wrist ganglion, and right lateral epicondylitis. Plaintiff agreed to and received a steroid injection. CAR 376-77. |
| March 13, 2017 | | Chart notes of physical examination. Dr. Lin reported left wrist dorsal compartment with moderate tenderness and a positive left Finkelstein test and bilateral lateral epicondyle with minimum discomfort. Dr. Lin's impression was of left deQuervain's tenosynovitis. Dr. Lin ordered a rheumatoid panel. CAR 374. |
| March 15, 2017 | | Report of a negative "ANA screen" on March 13, 2017, indicating the lack of any "ANA-associated autoimmune disease." CAR 368, 371. |
| April 4, 2017 | | Chart notes of physical examination. Dr. Lin reported that a rheumatoid panel from March 13, 2017, was negative. Dr. Lin also reported left dorsal wrist tenderness and a positive left Finkelstein test. Dr. Lin recommended a left deQuervain's release surgery. See CAR 373. |

While moderate tenderness and positive Finkelstein test both suggest the existence of some amount of limitation associated with left deQuervain's tenosynovitis, Plaintiff has not pointed to any evidence of record to establish that these limitations impact work-related activities or that any impact is more than minimal. Notably, Dr. Lin's records, upon which Plaintiff relies, reveal no findings of work-related limitations or opinions as to the extent of any such limitations.

///

Plaintiff contends the ALJ erred by failing to explain why Plaintiff's deQuervain's tenosynovitis is a non-severe impairment. In Mezquita v. Colvin, 2:12-CV-2042-EFB, 2014 WL 1272878 at *3 (E.D. Cal. 2017), cited by Plaintiff, the court reversed an unexplained severity finding because it could not discern why impairments had been found non-severe. In doing so, the court noted that the ALJ had not mentioned some impairment and, for others which were mentioned, the ALJ did not discuss the relevant objective evidence. See id. The current case is distinguishable. First, the ALJ here specifically mentioned deQuervain's tenosynovitis as well as objective evidence – tenderness and positive Finkelstein test – related to the impairment. Second, this Court is able to discern the reason the ALJ found the impairment non-severe, namely the absence of evidence of record showing any impact on Plaintiff's ability to perform work-related activities.

Finally, the Court finds that any error in the ALJ's failure to explain why deQuervain's tenosynovitis was found to be non-severe is harmless. Where the ALJ errs in not providing any reasons supporting a particular determination, the error is harmless if no reasonable ALJ could have reached a different conclusion had the error not occurred. See Stout v. Commissioner of Social Security, 454 F.3d 1050 (9th Cir. 2006). Such is the case here. Even had the ALJ specifically said that deQuerrvain's tenosynovitis is found to be non-severe because Plaintiff failed to prove the impairment causes more than a minimal impact on her ability to work, the rationale is apparent from the absence of such evidence in the record. On this record, no reasonable ALJ could have found that deQuerrvain's tenosynovitis constitutes a severe impairment.

        2.     Headaches

According to Plaintiff:

> . . . The only attention the ALJ gave to Plaintiff's medical evidence showing she suffers from migraines was to reject the opinions, at step two, from Plaintiff's primary care doctor, Dr. Rochanayon, that her headaches are in fact debilitating. AR 22. But even if the ALJ had proper grounds to not accept those opinions, that did not excuse her duty to at least provide an explanation for ignoring significant clinical evidence of Plaintiff's migraine impairment. . . .

ECF No. 16, pg. 9.

As discussed in more detail below with respect to the ALJ's consideration of the opinion evidence, the Court does not agree with Plaintiff's first proposition. In particular, the ALJ properly rejected Dr. Rochanayon's opinions because they are not supported by the doctor's own treatment notes. The Court also rejects Plaintiff's contention that the ALJ erred at Step 2 with respect to headaches by ignoring or failing to explain "significant clinical evidence." A review of the ALJ's hearing decision reflects otherwise. See CAR 21-22 (ALJ's discussion of evidence related to headaches).

      3.  <u>Myalgias, Shoulder, and Upper Extremity Pain</u>

Plaintiff contends:

> Finally, the ALJ erred in finding Plaintiff's myalgias, ongoing shoulder and upper extremity pain and numbness non-severe without giving any reasons. AR 21-22. Here, the analysis of these impairments the ALJ offers at step two affirmatively supports that they significantly limit Plaintiff's functioning. As the ALJ noted, treatment reports show shoulder "[m]ovements are restricted with active elevation and pain . . . [and] tenderness is noted in the acromioclavicular joint [citation]." AR 22 [citing AR 398-399]. Additionally, the ALJ pointed to a March 2018 examination that "showed right shoulder movements are painful with extension and internal rotation." AR 22. The ALJ does not explain how her own findings do not meet the de minimis test at step two. While the ALJ mentions a December 2017 physical therapy report that indicated some improvement from therapy, the ALJ makes no findings, and the record does not reflect, that Plaintiff's undisputed arm and shoulder pain was resolved or that her improvement during that physical therapy visit was sustained. Indeed, as the ALJ stated, clinical findings a few months later in March 2018 reflect ongoing limitations. The ALJ's internally contradictory reasoning is not reasonable grounds to dismiss Plaintiff's shoulder and arm impairments at step two.

ECF No. 16, pg. 12.

As with Plaintiff's wrist impairment and headache impairment, while Plaintiff cites evidence showing the existence of shoulder impairments, she has not presented any evidence as to the nature and extent of limitations associated with her shoulder pain. As both the ALJ and Plaintiff note, Plaintiff's shoulder impairment results in painful shoulder movements. Plaintiff does not, however, point to evidence establishing how painful shoulder movements limit her ability to perform work-related activities with her shoulder or the degree of any such functional limitation. Absent such evidence, Plaintiff has failed to meet her burden at Step 2 of demonstrating the existence of limitations that more than minimally impact her ability to work.

### B. Evaluation of Opinion Evidence

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the

opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

At Step 4, the ALJ considered the medical opinion evidence of record to determine Plaintiff's residual functional capacity. See CAR 25-27. In particular, the ALJ considered opinions from Drs. El Sayed, Richwerger, and Davis. See id. The ALJ found Dr. Richwerger's opinion, offered following a mental status examination, persuasive. See id. at 27. The ALJ also found Dr. Davis's opinion persuasive. See id. At Step 2, discussed above, the ALJ also

considered opinions offered by Plaintiff's treating physician, Dr. Rochanayon, which the ALJ rejected. See id. at 22.

Plaintiff challenges the ALJ's rejection of opinions offered by Dr. El Sayed. See ECF No. 16, pgs. 12-13. In the context of her argument related to Step 2, Plaintiff also challenges the ALJ's rejection of opinions offered by Dr. Rochanayon. See id. at 10-11.

    1.    <u>Dr. El Sayed</u>

As to Dr. El Sayed, the ALJ stated:

> . . .On January 18, 2017, Dr. Shyma El Sayed, Psy.D., completed a Psychological Consultative Evaluation and opined that the claimant is moderately to markedly limited with ability to perform work activities on a consistent basis, perform work activities without special or additional supervision and with ability to complete a normal workday or workweek without interruptions. Moderately too [sic] markedly limits [sic] with ability to deal with the usual stresses encountered in a competitive work environment (Exhibit B4F). I give some weight to this assessment showing moderate limitations, but I disagree with the marked limitations, which are not consistent with the claimant's symptoms or the medical record as a whole.

CAR 25.

According to Plaintiff:

> The ALJ rejected Dr. El Sayed's opinions for the thinnest of reasons, stating only: "I give some weight to this assessment showing moderate limitations, but I disagree with the marked limitations, which are not consistent with the claimant's symptoms or the medical record as a whole." AR 25. This is error, however, because "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988); *see, also, McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) ["Broad and vague" reasons for rejecting the treating physician's opinion do not suffice].
>     Similar to the step two finding, the ALJ's generalized, conclusory rejection of Dr. El Sayed's opinions leaves little for this Court to review. The error also cannot be deemed harmless because if Dr. El Sayed's limitations, which extend to a marked level of severity, are credited, then Plaintiff likely meets the standard of presumptive disability at step three of the Commissioner's evaluation process. *See*, *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Moreover, the ALJ's vocational expert testified that if Plaintiff requires two extra 20-minute breaks to complete each work-day, then she would not be able to perform her past work. AR 62. As such, the ALJ's legally erroneous rejection of Social Security's own psychologist's opinions is additional grounds for reversal.

ECF No. 16, pg. 13.

///

At footnote 10, Plaintiff adds:

> After Dr. El Sayed's examination, Social Security scheduled another mental health examination with a second consultant, David Richwerger, Ed.D., which purported to find mild limitations in Plaintiff's functioning only. AR 422-427. However, this report cannot serve as substantial evidence sufficient to reject Dr. El Sayed's opinions because, by its own terms, Dr. Richwerger deemed his opinions "not valid" due to testing inconsistencies he perceived. AR 426 ["The claimant's mental status evaluation results appear to be not valid."]. Moreover, Social Security curiously did not provide Dr. Richwerger with Dr. El Sayed's earlier findings, which further undermines the validity of the subsequent opinions. AR 423.

Id. at n.10.

Dr. El Sayed's report is contained at Exhibit B4F of the record. See CAR 342-47. Dr. El Sayed opined as to various moderate to marked limitations, some of which the ALJ rejected. Specifically, the doctor opined Plaintiff is moderately limited in the following areas: (1) ability to understand, remember, and perform simple written and oral instructions; (2) ability to maintain regular attendance; and (3) ability to interact with coworkers and the public. See id. at 345-46. Dr. El Sayed opined Plaintiff's limitations are moderate to marked in the following areas: (1) ability to understand, remember, and perform complex written and oral instructions; (2) ability to perform work activities on a consistent basis; (3) ability to perform work activities without special or additional supervision; (4) ability to complete a normal workday or workweek without interruptions from psychological symptoms; and (5) ability to deal with usual work stressors. See id. Dr. El Sayed also opined that Plaintiff is not capable of managing her own funds. See id. at 346.

Without elaboration, the ALJ accepted the doctor's opinions as to moderate limitations but rejected the doctor's opinions as to marked limitations. When viewing the ALJ's hearing decision regarding the medical opinions of psychiatric limitations as a whole, the Court finds no error in the ALJ's evaluation of Dr. El Sayed's opinions. In particular, the ALJ discussed other opinions from Drs. Davis and Richwerger. See CAR 26-27. Dr. Davis, who examined Plaintiff's medical records, opined that Plaintiff can perform simple repetitive tasks with limited public contact. See id. at 27 (citing Exhibit B4A). Dr. Richwerger, who performed an examination, opined that Plaintiff has no limitation in the ability to perform simple and

14

repetitive tasks.  See id. at 26 (citing Exhibit B10F).  Notably, Dr. Richwerger opined that Plaintiff has mild impairment in her ability to perform detailed and complex tasks, mild impairment in her ability to perform work activities on a consistent basis, mild impairment in her ability to complete a normal workday or workweek, mild impairment in her ability to deal with coworkers and the public, and mild impairment in her ability to deal with the usual stresses of work.  See id.  Dr. Richwerger opined Plaintiff has no impairment in the ability to perform work activities without special supervision, the ability to understand and accept instructions from supervisors, and ability to maintain regular attendance in the workplace.  See id.

When faced with conflicting medical opinions, the ALJ ". . .is the final arbiter with respect to resolving ambiguities in the medical evidence."  Tommasetti, 533 F.3d at 1041-42.  Further, the more consistent an opinion is with the record as a whole, the more weight the ALJ may give it.  See 20 C.F.R. § 416.927(c)(4).  Here, the ALJ properly weighed Dr. El Sayed's opinions of moderate to marked limitations against the other evidence of record, namely the opinions of Drs. Davis and Richwerger, the latter of whom performed an examination, and who both opined as to at most mild limitations.  It is also clear that the reason the ALJ discounted Dr. El Sayed's opinions of moderate to marked limitations was because such opinions are not consistent with the other doctors' opinions of record.  The ALJ is entitled to make this decision resolving conflicting evidence and properly did so here by citing the conflicting evidence from Drs. Davis and Richwerger undermining the opinions of Dr. El Sayed.

    2.  Dr. Rochanayon

As to Dr. Rochanayon, whose opinions the ALJ addressed in the context of the severity determination at Step 2, the ALJ concluded the doctor's opinions are not supported by his own treatment records or the medical evidence as a whole.  See CAR 22.

Dr. Rochanayon's opinions are outlined in Exhibit B13F, a form entitled "Headaches Medical Source Statement" completed in April 2019.  CAR 474-77.  This form lists a number of limitations associated with headaches, which the doctor characterizes as "severe." Notably, the form asks "During times your patient has a headache, would your patient generally be precluded from performing even basic work activities and need a break from the workplace."

1 | Id. at 476.  Dr. Rochanayon provided no response to this question.

2 | Dr. Rochanayon's treatment records are contained in Exhibit B14F.  See CAR 478-96.  These records cover the period from October 2017 through March 2019.  See id.  Notes from a visit on January 4, 2018, reflect Plaintiff reported for a fever with associated headache.  See id. at 493.  Dr. Rochanayon diagnosed hypertension and an acute upper respiratory infection.  See id. at 494.  On March 13, 2018, Plaintiff reported with complaints of neck and shoulder pain.  See id. at 490.  Dr. Rochanayon diagnosed hypertension, a single major depressive disorder, and an acute upper respiratory infection.  See id. at 491.  Similarly, on May 15, 2018, Plaintiff presented with complaints of right shoulder pain and right upper back pain "for many months."  Id. at 487.  The doctor diagnosed myalgia, Type 2 diabetes without complications, and hypertension.  See id. at 488.  On September 20, 2018, Plaintiff reported with complaints of headaches, back pain, and leg pain "for a few days."  Id. at 481.  Dr. Rochanayon diagnosed hypertension and bursitis of the right shoulder.  See id. at 482.  On March 6, 2019, Plaintiff reported for a medication refill.  See id. at 479.  Dr. Rochanayon diagnosed hypertension and right shoulder bursitis.  See id. at 480.

On this record, the Court agrees with the ALJ that the medical evidence, particularly Dr. Rochanayon's own notes, do not support the doctor's opinions outlined in the medical source statements.  While Dr. Rochanayon opined that Plaintiff's headaches are severe and cause significant limitations in work-related activities, the treatment notes simply do not reveal any findings, objective or subjective, to support such extreme opinions.  Notably, over the course of Dr. Rochanayon's treatment, Plaintiff only complained of headaches twice and at no time did Dr. Rochanayon diagnose migraines or some other headache disorder.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## IV. CONCLUSION

Based on the foregoing, the Court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 16, is denied;
2. Defendant's motion for summary judgment, ECF No. 18, is granted;
3. The Commissioner's final decision is affirmed; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated: June 23, 2021

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE